et al. Argument not to exceed 15 minutes per side. Ms. Hinkle, you may proceed for the appellants. Cross appellees. We have a motion pending now before this court, so we want to be sure that each of you have an opportunity to address that motion today and you may want to begin with that. Thank you, Your Honor. My name is Casey Hinkle. May it please the court and counsel, I'm here today to represent Louisville Metro and its Human Relations Commission and individuals named in their executive capacities as defendants below, the executive director and board members. We are here today to discuss a pre-enforcement challenge to Louisville's non-discrimination law by a wedding photographer named Chelsea Nelson, who now lives in Florida. Ms. Nelson lived in Louisville throughout the trial court proceedings, but recently disclosed in her fourth brief filed with this court that she's moved out of state. Nelson's admission that she no longer lives in Kentucky is something that must be considered by this panel, as Article 3 requires the existence of an actual controversy at all stages of the case. This is a jurisdictional matter. That is why we filed a motion to remand the matter to district court with a direction to dismiss Ms. Nelson's claims as moot and or for lack of standing in light of the fact that she's no longer a resident of the jurisdiction. So the burden flips to you on mootness from standing, by which I mean the defendant has the burden to prove mootness. Do you think we need fact findings on some of the statements made in her footnote, maybe additional discovery on whether the move actually eliminates all credible threat of prosecution? And if so, I suppose remand would be the appropriate course for the fact finding. I agree that remand is appropriate if your honors believe that fact finding is required. We submit that the admission that she's moved out of state is all that's needed to compel dismissal of this matter. There's some tricky questions embedded in that, I guess. If she still says she's going to continue to serve individuals in Louisville, I assume that you think that your ordinance would apply to folks who are outside the county but provide services within the county. You would take it they would apply if they actually came into the county? I will say there's been no history of enforcement against non-residents. I think it would be a case specific. So if somebody who just lived right outside the county and provided services regularly, wouldn't that, I mean you would concede that? That would certainly be a different case. Ms. Nelson, we believe she lives in Florida. She has no prior history of traveling to provide the services that are at issue in this case, wedding photography services. There's been an attorney representation that she'd be willing to do so if she were hired by a Louisville-based client. That's something that I don't think the court may consider. It's not something that's of an evidentiary quality. I'm trying to figure out which element of the standing comma or slash mootness the move actually affects. Is it the chance that she will actually provide services in Louisville is now just so low because she lives outside? Would that be, I suppose, your argument? When I think about SBA list, I think of an intent to engage in conduct that arguably violates the statute. So it would be her own intent to engage in conduct, which would be violating the Kentucky ordinance by providing services in Louisville, but not to same-sex couples. Yes, SBA list requires that there is an analysis not only of intent to violate, but also whether there's a credible threat of enforcement against the particular plaintiff. Ms. Nelson's move to Florida is directly relevant to that credible threat of enforcement. I think the chances that she would actually be given an opportunity to violate the statute are virtually nil at this point. Let me ask you about that because there's the accommodations provision and there's the publication provision. Are you taking the position that the publication provision would not apply to an internet advertisement that said she would only provide services to opposite-sex couples for marriage in Louisville, Kentucky? I think it's unprecedented to find pre-enforcement standing to challenge such a law on a nationwide basis, which is effectively what you'd have to find here if you find that Ms. Nelson has standing. I'm asking what is Louisville Metro's position as to whether the publication provision would apply to an internet advertisement which said that the photographer will not provide services for same-sex marriages in Louisville, Kentucky? The publication provision does apply to websites, but the question here is whether Ms. Nelson individually has standing to challenge that law. Louisville Metro believes it would apply to her website. Whether or not Louisville Metro is going to enforce that is another question, but Louisville Metro is taking the position that this publication provision would apply to Ms. Nelson's website regardless of where she's located. Let me clarify. Louisville Metro would say that the publication provision applies to websites of public accommodations that are within its jurisdiction under the ordinance. I don't think Louisville Metro would say that it has the authority under its publication provision to enforce against any website in the world just because it's accessible. What if the website specifically articulated that it was geared towards weddings in Louisville, Kentucky regardless of where it came from? Would Louisville Metro take the position that that website violates the publication provision? I think that's a fact-specific inquiry. I think that in this case, Ms. Nelson is a photographer who lives in Florida. The fact that she hasn't changed her website... I don't think we can answer that question definitively for all instances in which that may happen. In this case, Ms. Nelson's website was very much geared toward Louisville when she lived here. She has not changed her website, probably because of the pendency of this case, to reflect her move to Florida. And the website does specifically reference Louisville, Kentucky? It does. So if the district court finds it moot and vacates the injunction and her website is still up, you could file an enforcement action against her the next day, presumably. So I guess the question is, we don't have to answer kind of hypotheticals. What about this case's facts? If her website is still up and she's in Florida and the injunction is withdrawn, meaning that the publication provision can't apply to her, would Louisville take the position that they would enforce it against her? Louisville Metro has no intent to enforce its public accommodations law against Florida wedding photographers. I think it's also important to refer to Ms. Nelson's claim under Kentucky RFRA. I think that claim requires unique analysis because there's absolutely no indication in that statute that it's intended to be something that a non-resident could take advantage of. She's raising more than just Kentucky RFRA. She's raising the free speech clause of the federal constitution, correct? That's certainly true, yes. And under that provision, under 303 Creative, it seems like that's a pretty close case to what we have here, isn't it? There are some similarities between this case and 303 Creative. I certainly have to acknowledge that. Is your only basis to distinguish 303 Creative on the free speech claim, is your only basis the fact that you're arguing she does not have standing or that it has become moot? I think there are two key bases. The first is that the standing analysis is very different. That case involved a Denver website designer. Here we have a Florida wedding photographer that's challenging Kentucky law, Louisville law. Also, it's my read of that majority opinion that the legal conclusions in that case were compelled by party stipulations that were effectively stipulations of law. That the services to be provided by that web designer were expressive, were intended to communicate messages about the designer's vision of marriage that are not present here. The majority opinion in 303 Creative acknowledged that there will be difficult cases that don't have these stipulations where courts will be required to contend with whether a business is expressive enough to come within the holding. What are you saying the difference is, as a matter of fact, between a wedding photographer and the cake wedding designer in 303 Creative? What are the distinctions, if any, you're making between those two to distinguish 303 Creative? We do not stipulate or agree that the services that Ms. Nelson provides, wedding photography, constitute pure speech. Why did they not constitute free speech? Pure speech. Pure speech. Because wedding photography is not of a quality that is, or a type of service that has been considered speech according to the court's decades of jurisprudence, which recognize things like parades, political rallies, political expression as pure speech. What about United States v. Stevens? I thought the court suggested that movies, pictures, things that aren't words, photos, are entitled to First Amendment protection. Stevens was a pretty egregious case. It was a video of a pit bull just viciously attacking another animal, a pig of some type. And the court said that that was entitled to First Amendment, it came within the First Amendment. If that comes within the First Amendment, I have a hard time seeing how just pictures aren't subject to First Amendment protections. I think first it's important to distinguish between some of the extreme examples that have been cited by Ms. Nelson and were also cited in the majority opinion in 303 Creative. Things like movie directors, speech writers, these types of professionals almost never, in any case that I'm aware of, advertise their services for sale to the public generally. So those are different and extreme examples. We're just trying to see where the limit is. You do have a basis to distinguish 303 Creative on the basis that there were words on the website and here it's pictures. I grant you that that's a basis for distinction, but I think it would be quite unprecedented to say that pictures aren't entitled to First Amendment protection. It was a video, it wasn't pictures for sure, but it was a pretty egregious video and it didn't really have speech. As far as I can tell, it was just an animal attacking another animal and the court said it was entitled to First Amendment protections. For decades, the Supreme Court has permitted regulation of businesses that include some component of speech under generally applicable non-discrimination laws. The question is, is the burden on speech incidental or is it so core to what's being required of the public accommodation that it moves into the case of compelled speech? We think this case is clearly one that falls within the former category that the Supreme Court has authorized municipalities and states to regulate the provision of a product that a business elects to offer for sale to the general public are able to require through laws that that business not decline customers on the basis of a protected status. Would that logic apply to the content in a newspaper, too? That regulation of the content of newspaper is allowed, so it's pure speech, because it's incidental to the sale, so say the New York Times or the Wall Street Journal, you can regulate the content of those papers because it's a product for sale? I think it would depend on what the regulation of content was, but if you have an editorial on opposite-sex marriage, you need to have an editorial promoting same-sex marriage. That is the Tornillo case, and I think that's a situation that's very different than the one here. The public accommodations law that Louisville Metro has on its books does not compel Nelson to create speech because she's creating a different kind of speech. It's the same speech. Wedding photography of a same-sex couple is the same as wedding photography of an opposite-sex couple. I think your red light has been on for a while. You'll have your time. What amount of time did you reserve? I reserved five minutes, potentially, to address the cross-appeal issues if those come up. Thank you. Thank you. Good morning, Your Honors, and thank you, Jonathan Scruggs, on behalf of the appellees, Chelsea Nelson and her photography studio. I want to go directly to the mootness, jurisdictional issues, because that's what was talked about. First of all, let me ask you, this motion was filed last night. Do you need an opportunity to file a written response? Absolutely, Your Honor. We would request that. In fact, many of the things I'm going to talk about I'll flesh out more in our written response to that motion. On the mootness issues, let me first divide it into two parts, first about damages and then about injunction equitable relief. So for the damages issue, I think that's pretty easy. The Supreme Court said in Usa Bunum that a request for damages, including nominal damages, prevents a case from becoming moot. So we've done that. So this court needs to analyze whether we are entitled to those nominal damages. And to answer that question, again, I think it's pretty easy. We have two district court judges saying that Ms. Nelson objectively chilled her speech because of objective credible threat. So the same injury that is sufficient, if Ms. Nelson suffered that harm of being unable to speak at the time the lawsuit was filed and warranted an injunction, that's the same injury that also warrants nominal damages. The district court dismissed your nominal damages claim by saying you failed to adequately plead an injury. So isn't this argument that you're making today entirely dependent on a reversal of that decision? It is, Your Honor, and that's why we cross appealed that, for sure. But I will say this, that decision came before the Usa Bunum decision and, of course, relied on Morrison. And we're arguing— So Usa—I can't pronounce that case name, I'm sorry. But there were two plaintiffs in that case, one who the court suggested had a completed injury because— a completed constitutional injury because the relevant regulation had been enforced by an officer who told the plaintiff to stop speaking. And then there was another plaintiff who just suggested the plaintiff's speech was chilled because of the regulation. And the court did seem to suggest that the second plaintiff might not have a claim for nominal damages because it requires a completed constitutional violation. I would guess the analogy would be if she said she provided services for a same-sex wedding because of the ordinance and then she sued for damages to her First Amendment rights on the ground that that was compelled speech, I could see that implicating this case. But where is the completed constitutional violation if you're really suing over a future—a threat of future prosecution? Well, Your Honor, in Usa Boonham, it was remanded. You're talking about the plaintiff, Joseph Bradford. It was remanded. The court didn't decide that. And in fact, later on, it was a settlement. I know because I was involved in the case that the city did award a dollar of nominal damages. But setting that aside, it's not about the future injury. It's about the ongoing and past harm. So it's undisputed that Ms. Nelson wanted to post her statement but refused. And in fact, we can even give you specific dates. Ms. Nelson finished drafting her statement on November 8, 2019, and then didn't post it until she got the preliminary injunction order. So this isn't just like a feature thing. In her testimony, she said she would have posted that statement immediately. So for that period of time— I'm struggling with that. Really, in the context of the substantial burden argument, you raise cases that you say enable you to make this argument successfully, and you rely on Maryville. But didn't Maryville have actual enforcement activity? In that case, the police officers were telling the congregants that came to a worship service that they could not come, that it was a violation of criminal law, and they were writing down their license plate numbers. And you also rely on Doster about the Air Force vaccine mandate. But in those cases, there was that injury that they were required to participate in depositions, type inquiries into their own beliefs. So I don't see how your response to Judge Murphy's question is adequate in light of precedent. Well, you're referring to the Kentucky RFRA. Just to be clear, we're not seeking damages for the Kentucky RFRA because we're barred because of state sovereign immunity. We're only seeking declaratory and injunctive relief for that. So our damages claim, nominal damages, really goes to the First Amendment issue. And of course, numerous courts, Supreme Court, this court, have allowed pre-enforcement standing before a law was even gone into effect. So there is no past enforcement. So really, past enforcement is irrelevant. What's undisputed is Louisville's admitted that the law banned her statement or forbid her statement. And we also know that we have past examples of Louisville officials going online, seeing things in the news, and filing complaints on their own. We also have examples of private testers seeing things online in the news and filing their own public accommodation complaints. So again, we have the two courts saying there's an objective threat, an objective chill. So is your theory then that every day that she didn't post, I assume the statement you're talking about is the one that was attached to her complaint where she said, I wanted to say that I will not perform same sex. Yes, Your Honor. And so every day that she did not post that because of the ordinance, that is a completed First Amendment injury? Yes, Your Honor. I mean, that is a chill. What's the best case you have for that? Has there been much case law after that Supreme Court case? Yes, Your Honor. We have cited some cases even before it has been. There's a Seventh Circuit case, Six Star Holdings v. City of Milwaukee that involved this past chill injury. There was a recent case that I was involved in in District Court of Alaska, Hope Center, downtown Hope Center v. City of Anchorage, where it involved the exact essentially central scenario where someone was chilled by a similar publication type ban. And the court there awarded nominal damages for that period of time where they were unable to speak. And again, I think it's a pretty unusual... Do you agree that there has to be some limitation on this? What if it's totally unclear whether the prosecutor would actually enforce the relevant provision against the speech? Do you think that just refusing to speak because it might is enough? No. And I think that's actually what separates Morrison. So Morrison itself, the court there, again, it's distinguishable and overruled. It was distinguishable because it was just a subjective chill. There's no evidence that the law even arguably forbid the person or any type of credible threat. So in that case, the plaintiff couldn't have gotten either an injunction or damages. Right? And I'd also note that both... Do you think the two are tied together? I think, like conceptually, I think they are, Your Honor. If someone is objectively chilled right there that they can't speak and that justifies an award of an injunction, I think it has to also... It has to be logically tied together that they're also suffering injury right there from being unable to speak. That occurred in the past. So I want to address the floodgate concern. In fact, Usaboonam and even that case I cited in the Seventh Circuit explicitly addressed this floodgate concern. There are other limitations you've got to prove. You've got to prove all the other requirements for standing. An intent, a specific intent to engage and speak at a specific time, all the other requirements. And in fact, in the Seventh Circuit, that Seventh Circuit case has happened since 2016, there have been many other district court cases that have followed it in a similar context, and there have been no problems there. So there's no floodgate concerns. No one's running to court because you've got to meet all the other requirements. What if a hypothetical, the city would have said, oh, we would have applied Kentucky RFRA. We would have agreed to apply to that speech, so we would never have enforced this, but you never asked us. There would still be nominal damages because we're thinking of the facts as they existed at the time of the complaint, and if the city's response would have been something to the effect of, well, we respect state law. State law would apply here. You should have just asked us, and we would have told you we weren't going to enforce it. Would your nominal damages claim some help? Probably not. I mean, that goes to the disavow prong. Like if we look at Sixth Circuit case law about whether there's pre-enforcement standing, period. You know, if the government is disavowing explicitly, that's one of the key factors. So that would eliminate the credible threat of prosecution for purposes of getting an injunction against the prosecution. Do you think it would also eliminate a nominal damages claim for the time in which you did not speak? Yes, I think basically the analysis is the same. Why? Like in terms of if you have... You still didn't speak, and it was because of the law, but I guess it was because you misunderstood the law altogether. Is it a subjective shill or is it an objective shill? I think the analysis is just the same. Whether you have standing to get that injunction at that period of time, you're basically asking is the credible threat objectively real for both questions. So it's the same analysis. You know, given that we've talked about nominal damages, I want to briefly address the injunction-type issues. So to be clear, Ms. Nelson is still incorporated in Kentucky. Her website is directed at Louisville. Most of her weddings have occurred in Louisville. We've said and will provide a declaration saying that she wants to do that. I think the key point, Your Honor, is... Provide a declaration, what, with your opposition? Yes, Your Honor. I'm concerned, though, are we really the right level to be making these factual findings? Shouldn't we send it back to the district court to make these findings? Well, Your Honor, here would be my suggestion. See what our response is and then evaluate. Appellate courts do allow in these type of situations where there's a jurisdictional issue on appeal, allow parties to provide supplemental declarations. Now... I would welcome both sides to brief that point in their following... I mean, this just came at the last minute, so we haven't had much of an opportunity to really review this. But the key is going to be, I think, for as an appellate court, what authority do we have to look at these factual, new factual statements and make evaluations of them? Or do we need to send it back to the district court? Yes, Your Honor. We will provide citations in the Sixth Circuit. I've also seen some other cases in other circuits allow it, just in these jurisdictional-type issues when you have changes. Now, again, my suggestion would be let us see our response, evaluate it, if the court then wants to... The other point would be, it may be the new facts are not that material to keeping the injunction in place. So I would also be interested in that issue being addressed. Absolutely. And I can talk about that just right now really quickly. So first of all, evaluating the nominal damages claim is still alive, right? So that has to kind of occur. Then you go to the issue of injunction. And I think the key problem that Louisville is making is anti-discrimination laws don't just apply where someone is physically located, but they also apply where the effects are felt, right? Title VII has a venue clause that's very common where you have a business in Ohio who refuses to hire someone in Michigan. The venue clause will allow the person to sue where the person is located, right? And public accommodation laws actually operate the same way. We can cite some cases from New Jersey and also from the District of Columbia that have applied their public accommodation laws in this situation where a decision is... not just where the decision is made, but where it ends up or where it goes to because the effects are felt there. That's pretty typical. That's practical enforcement. I'm just struggling with the facts that already exist in this case that Ms. Nelson has received nothing. No enforcement notes. No challenge to what she's done. No stating of an intention to take action against her. So how does this fit within the arguments that you're making when the record is just completely devoid of many of the items that would be the basis of her standing even to bring the claim? Okay, that goes back to the original. Yes, I'm back to the original. Yes, I'm looking at the original standing. To be clear, Louisville has admitted that it actively enforces its law, that it's enforced it over 100 times against public accommodation laws. But isn't there a requirement that the enforcement be against comparable conduct? No, Your Honor, I don't... The case law does not require that the enforcement be against comparable conduct? No, Your Honor. In fact, I'd point the court to speech first out of this jurisdiction. That argument was exactly rejected in that case. In that case, it was a harassment speech code against students and there is no evidence of past enforcement against protected speech. There is only 16 instances of enforcement, period. Yet the court still found standing in that situation because the jurisdiction did not disavow. And again, the Supreme Court has found pre-enforcement standing before a law even went into effect. So there was no enforcement, period, both in Booksellers and in the Whole Women's Health case, the SB-8 case. So what's key is not, as I would say, standing doppelgangers, but credible threats. And here, it's undisputed that the law covers our client, that the city refused to disavow again and again. And the city's entire legal theory is that any instance of, quote-unquote, discrimination can be enforced. They use testers. City officials can independently file a complaint and initiate enforcement and have initiated enforcement. So this case is actually easier than 303 Creative. There's much more evidence. In 303 Creative, there are 102 stipulated facts. Here, we have a 1,300-page record with a 510 declaration from Ms. Nelson that covers 62 pages detailing her. But 303 had stipulations, and you do not. Isn't that correct? But we have more undisputed facts, Your Honor. We have many more undisputed facts. We have evidence of prior enforcement. Are you speaking to the supplemental records that the court indicated it did not consider? No, Your Honor. Well, in 303, there was only 102 stipulated facts. That was the entirety of the record. Here, we've gone through discovery. We have an immense record of enforcement history. We have Louisville again and again refusing to disavow, saying their entire legal theory is that they not only can enforce against my client, but they have a compelling need to enforce against my client. I would just note Judge Kavanaugh's thought  and said it's really ironic for the government in the first half of their brief to say there's no standing and in the second half say, this is the exact problem we have to enforce against. And that's what is happening here. Thank you. Your time is up. Thank you. Thank you, Your Honors. I think it's clear that Ms. Nelson is going to be advocating for something that would mean nationwide standing to challenge public accommodations laws based on a bare assertion that the accommodation would provide a service if hired in the local jurisdiction. That would be truly unprecedented. What's your response to the nominal damages point? That would be for past injury. It wouldn't allow for the injunction to remain.  that nominal damages are enough of a remedy for a past injury to allow for a case to eliminate any mootness concerns. And there is a theory that she has alleged that she refused to put the statement on her website because of the ordinance and then got a preliminary injunction. And there was an injury, a speech injury, every day that she did not put it up before she got the injunction. And that that was a sufficient Article III injury to allow for nominal damages. It does seem somewhat to fit the facts of the Supreme Court case. I think it was Judge Strange that pointed out that that case involved a plaintiff who had actual enforcement against them. So the impact on Morrison v. Board County, the Sixth Circuit opinion that the district court here relied on to dismiss Ms. Nelson's claim for nominal damages is overstated. I think Morrison still controls and that the cross-appeal should be rejected. Well, I think that would be one thing if once she brought the suit, Louisville Metro had come in and said we're never going to enforce this against you. And then that would have demonstrated maybe she had a misunderstanding of how the law applied. But clearly here, once she got into court, Louisville Metro defended the case. So that seems to me to show she was objectively accurate in viewing the law as prohibiting her from making that statement. How do you respond to that? That the law in Morrison still controls that nominal damages are not to redress past chill. So you can never get... What if the law was perfectly clear? The law said there shall be no speech in this park. And then I say the law is crystal clear. I can't speak in the park. I'm injured. It's a traditional public forum that that law is patently unconstitutional. I didn't speak in the park for months because of the law. And then I bring a suit to get an injunction and for nominal damages, you think? So I think it's your position that until I attempt to get the government to enforce the law against me, I just can't get nominal damages for my own decision not to speak because of the law? That's our position, yes. So you have to violate the law first before you can get any kind of damages? Or experience some enforcement activity. And you think Morrison stands for that proposition? I do. And is there not some sort of requirement for identity or comparability of the conduct that is being prohibited? Your opposing counsel says, Nope. If you deny... It's an enforcement issue and if you say that you have been chilled, the identity of the conduct that you want to engage in is not either controlling or, I don't want to misstate, perhaps irrelevant. What's your understanding of that? I think that's a legal point about which we besides fundamentally disagree. We submit that there is a requirement that individuals standing as an incredible threat of enforcement must be specific to the plaintiff. I think the Sixth Circuit precedent is clear that in the case of a targeted law, there does not necessarily need to be a significant history of past enforcement in similar circumstances. But that's not what we have here. The public accommodations law is a very general law that applies to all businesses that offer goods and services to the general public. So the cases that Ms. Nelson invokes to suggest that she's made a specific enough showing, if you look at those cases, they involve targeted laws that are aimed directly at the plaintiff's business, which is not the case here. So that's why we've advocated throughout the case, even when Ms. Nelson lived in Louisville, that she did not have a sufficiently credible threat of enforcement to support a pre-enforcement challenge. We thank you both for your arguments and your briefing on a complicated issue. The case will be taken under advisement. We will look into the motion, and you will hear in due course.